UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NILE RODGERS,

                         Plaintiff,

      -against-

NORMA JEAN WRIGHT and LUCI MARTIN,

                         Defendants.

04 Civ. 01149 (RJH)

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

Before the court is plaintiff Nile Rodgers' claims for damages and attorneys' fees, and to modify the October 28, 2008, permanent injunction. For the reasons that follow, (1) plaintiff is not granted damages; (2) plaintiff is not granted attorneys' fees; and (3) the injunction need not be modified.

## BACKGROUND

Plaintiff Nile Rodgers, a founder of the music group Chic, brought the trademark infringement action against two singers who once performed as part of Chic, defendants Norma Jean Wright and Luci Martin. Rogers is the owner of a registered trademark in "Chic," and, along with his late partner Bernard Edwards, has exploited the mark in commerce continuously since 1977. Wright and Martin claimed no ownership of the mark, but had performed in the United States and abroad as "Ladies of Chic" and "Original First Ladies of Chic," and sometimes simply as "Chic." On July 13, 2006, this Court issued a preliminary injunction enjoining Wright and Martin's infringement of

1

Rogers' trademark, and issued an amended preliminary injunction on December 22, 2006.

On March 31, 2008, this Court granted plaintiff's motion for summary judgment and denied defendants' motion for the same. The Court found (1) that plaintiff's mark was protectable; (2) that defendants' uses of "Chic," "Ladies of Chic," and "Original First Ladies of Chic," were likely to cause confusion; (3) that defendants could not establish a fair use defense; and (4) that any relevant injunction should have extraterritorial effect. (Docket No. [114].) Then on October 28, 2008, this Court permanently enjoined defendants and each of their agents, servants, employees, attorneys, and persons in active concert or participation with them from using or commercially exploiting the word "Chic" anywhere in the world, generally and specifically in connection with concert promotion, publicity, and performance; and also established other restrictions. (Docket No. [121] (the "Permanent Injunction".) The Court also granted the parties leave to submit papers in support of and in opposition to plaintiff's claims for damages and attorneys' fees.

## DISCUSSION

**Modification of the Permanent Injunction**

Plaintiff's requests that the Permanent Injunction be modified to include a provision "requiring the promoter and booking agent to sign a document acknowledging that they have read the permanent injunction and that they understand that any appearance promoted in violation of the injunction is subject to cancellation." (Letter Brief of James P. Cinque to the Court, dated Nov. 5, 2008 ("Pl.'s Mem.") at 2.) The

Court finds this modification unnecessary.  The Permanent Injunction already includes the following provisions:

- "[Defendants], and each of their agents, servants, employees, attorneys and persons in active concert with them . . . are permanently enjoined, directly or indirectly, from anywhere in the world: . . . commercially exploiting the word "Chic," . . . [and] using any reproduction, copy or colorable imitation of the word "Chic" or any variant thereof in connection with publicity, promotion, sale or advertising . . . including, without limitation, public appearances, concert performances . . . ."  (Permanent Injunction ¶ 1(a) and (b).)
- "Not later than thirty days prior to any performance by any defendants in connection with which defendant publicizes or promotes her prior affiliation with Chic (hereinafter a "covered performance"), . . . defendant shall provide all promoters and venues, in writing, the terms of this permanent injunction order." (*Id.* ¶ 3.)
- "As a condition to engaging in any covered performance . . . defendant shall obtain a signed verification from any promoter or venue acknowledging understanding of the restrictions on advertising and promotions."  (*Id.* ¶ 4.)
- "In connection with any covered performance, . . . [i]f at any time defendant becomes aware of the violation of any of these promotional or advertising restrictions, defendant shall notify plaintiff's counsel, in writing, within seven days."  (*Id.* ¶ 5.)

The court finds these provisions, collectively, sufficient to allay plaintiff's fears.

**Damages**

>Section 35(a) of the Lanham Act states in relevant part:
>
>When a violation of any right of the registrant of a mark . . . , a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. . . . If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. . . . The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).

Plaintiff here claims entitlement to recover defendants' profits. (Pl.'s Mem. at 2.) A prevailing plaintiff is not, however, automatically entitled to profits; "[s]uch relief is generally available on a discretionary basis upon a finding that the defendant acted in bad faith." *Viacom Int'l Inc. v. Fanzine Int'l, Inc.*, No. 98 Civ. 7448, 2001 WL 930248, at *5 (S.D.N.Y. Aug. 16, 2001). In the Second Circuit, that defendants' infringement was willful factors strongly into the analysis, and is perhaps a prerequisite to any recovery of profits.[1] *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) ("plaintiff must prove that an infringer acted with willful deception before the infringer's profits are recoverable."); *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992) ("[We] hold that under § 35(a) of the Lanham Act, a plaintiff must prove that an infringer acted with willful deception before the infringer's profits are recoverable."). In addition, the plaintiff must prove "(1) the defendant's unjust

---

[1] See *infra*, note 2.

enrichment; (2) the plaintiff's damages, if any, from the infringement; or (3) that an accounting for profits is necessary to deter future willful infringement." *Chloe v. Zarafshan*, No. 06 Civ. 3140, 2009 WL 2956827, at *5 (S.D.N.Y. Sept. 15, 2009) (adopting Report and Recommendation). "The standard for willfulness is whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Nike, Inc. v. Top Brand Co. Ltd.*, No. 00 Civ. 8179, 2005 WL 1654859, at *6 (S.D.N.Y. July 13, 2005) (citing *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999)). If, however, the defendant believed in good faith that his use of the mark did not constitute infringement, and is able to support that belief with more than conclusory allegations, then the court may find that defendant's infringement was not willful. *Id*.

Once plaintiff justifies entitlement to defendant's profits, plaintiff must establish only the amount of defendant's sales—i.e. defendant's profits in gross. It is defendant's burden to prove that any part of those sales is attributable other than to its infringing use of plaintiff's mark. *Rexall Sundown, Inc. v. Perrigo Co.*, 707 F. Supp. 2d 357, 359 (E.D.N.Y. 2010); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 72 (2d Cir. 1998). If plaintiff is unable to prove defendants' actual sales and/or profits with hard numbers, it is "reasonable and appropriate" for the Court to estimate the correct amount using submissions from the parties. *See Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 292 (E.D.N.Y. 2009). Moreover, because of the limited nature of the evidence in cases such as these, and especially as here where defendants admittedly kept scarce records regarding contracts and finances, the competent evidence a court relies on in assessing profits might be minimal and the Court

may ignore evidence that would otherwise be inadmissible at trial.  *See GAKM Resources LLC v. Jaylyn Sales Inc.*, No. 08 Civ. 6030, 2009 WL 2150891, at *5 (S.D.N.Y. July 20, 2009) (court made estimate of profits damages relying on defendant's deposition testimony admitting to, and invoices establishing, certain sales; while disregarding plaintiff's allegations of additional unrecorded sales based on hearsay evidence).

Plaintiff here requests as damages defendants' alleged gross profits of $211,875.00.  In support of this figure, plaintiff submits excerpts (1) from defendant Wright's declaration in opposition to plaintiff's application for a permanent injunction, dated April 18, 2006, stating that defendants perform on average five to six times a year and receive between $3,500 and $6,500 per performance; (2) from defendant Wright's deposition in which Wright stated that defendants began using the "Chic" mark in the United States in 2000 or 2001; and (3) from defendants' website which plaintiff alleges demonstrates that defendants used the "Chic" mark through April 2008.  (Pl.'s Mem. at 3.)  Without addressing the adequacy of this aggressive calculation, the Court concludes that plaintiff has failed to establish that defendants acted with willful deception, and therefore that plaintiff is not entitled to an award of profits.  Defendants here articulated a good faith rationale for their use not constituting infringement; in its opinion granting plaintiff summary judgment, the Court took stock of, though eventually denied, defendants' argument that plaintiff's mark had lapsed and been abandoned.  *Rodgers v. Wright*, 544 F. Supp. 2d 302, 209 (S.D.N.Y. 2008).  In addition to abandonment, defendants plausibly argued that the Court lacked subject matter jurisdiction over their foreign concerts in that the Lanham Act did not have extraterritorial application.  (Defs.' Mem. in Support of Mot. to Dismiss, filed Nov. 15, 2005, at 1-2.)  Moreover, when

plaintiff moved in April 2007 to hold defendants in contempt for violation of the Court's December 22, 2006 amended preliminary injunction, the Court denied that motion, finding that "defendants [have] attempted to avoid infringement[,] . . . that there is significant doubt as to whether defendants received actual notice of the Amended Preliminary Injunction, and [that] it is clear that defendants were attempting to abide by the terms of the Court's [initial] Preliminary Injunction." (Order of Mar. 31, 2008 at 4-5.) Plaintiff's conclusory allegation that defendants' infringement was "clearly willful," (Pl.'s Mem. at 3) is insufficient to establish either that defendants knew or that they recklessly disregarded that their use of the "Chic" mark constituted trademark infringement. Having not presented any evidence of willfulness, and as it appears that defendants' actions were not willful, awarding damages in this case would be inappropriate.[2] *See Malletier v. Dooney & Bourke, Inc.*, 500 F. Supp. 2d 276, 282 (S.D.N.Y. 2007) (declining to award profits when plaintiff presented "absolutely no proof" that "[defendants] attempted to deceive customers."); *Information Superhighway, Inc. v. Talk America, Inc.*, 395 F. Supp. 2d 44, 57 (S.D.N.Y. 2005) (denying an award of

---

[2] The Court recognizes that "[t]here is some debate about whether willfulness remains a pre-requisite for obtaining a defendant's profits." *Rexall Sundown*, 707 F. Supp. 2d at 358 n.1; *see also Bambu Sales*, 58 F.3d at 854 (requiring proof of "willful deception" as a prerequisite for granting profits). This debate arises from 1999 amendments to the Lanham Act removing any explicit statutory requirement of willfulness for Section 35(a) violations. *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd v. Star Mark Mgmt., Inc.*, No. 04-CV-2293, 2007 WL 74304, at *11 n.17 (E.D.N.Y. Jan. 8, 2007). Courts in this and the other districts in this circuit are split as to whether the Second Circuit's willfulness requirement survives the 1999 amendments. *Compare Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04 Civ. 7369, 2006 WL 2128785, at *4 & n.2 (July 28, 2006) (Swain, J.) (noting the 1999 amendments but stating that "Second Circuit case law holds that, before a plaintiff can receive an accounting of a defendant's profits . . . , the plaintiff must show willful conduct or bad faith on the part of the defendant in connection with the Lanham Act violation," and requiring such a showing), *Koon Chun*, 2007 WL 74304, at *11 (same), *and Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, No. 00-CV-5304, 2004 WL 896952, at *9 (E.D.N.Y. Mar. 26, 2004) (same), *with Nike*, 2005 WL 1654859, at *9 (Wood, J.) (finding that though "willfulness is not a prerequisite to recovery of profits . . . it is a factor that must be taken into consideration."). Given the equities of this matter—in which two unsophisticated individuals sporadically performed in small or foreign venues, and where evidence of actual lost bookings to plaintiff is absent—the Court finds that it would be inappropriate to award defendants' profits as damages whether willfulness was viewed as a prerequisite of merely a factor in the analysis.

7

defendant's profits when plaintiff "has not shown any willful infringement"). Because plaintiff has not established entitlement to defendants' profits, the Court need consider neither the proper measure of those profits nor whether that sum should be trebled.[3]

**Attorneys' Fees**

Plaintiff also requests attorneys' fees pursuant to Lanham Act section 35, 15 U.S.C. § 1117(a). "Section 35 of the Lanham Act provides that a prevailing party on a trademark claim may recover attorneys' fees 'in exceptional cases.'" *Ritchie v. Gano*, ___ F. Supp. 2d ___, 2010 WL 4970103, at *1 (S.D.N.Y. 2010) (citing 15 U.S.C. § 1117). In this circuit an "exceptional case" must involve fraud, bad faith, willful or deliberate infringement, or oppressive litigation on the part of the losing party. *Id.*; *see also Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2d Cir. 1996).

Plaintiff argues that attorneys' fees are warranted because "[t]his matter was hotly contested by defendants through their counsel right up through the granting of summary judgment," and because "plaintiff made numerous and reasonable overtures to settle the matter short of litigation, all of which were rebuffed by defendants." (Pl.'s Mem. at 3.) True that these defendants may have been better served by different counsel; but counsel did raise legitimate defenses and, without more, counsel's actions do not constitute bad

---

[3] Even if the Court awarded profits, however, trebling would nevertheless be inappropriate. First, as discussed above, plaintiff has not demonstrated that defendants' infringement was willful. *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 628 F. Supp. 2d 312, 321 (E.D.N.Y. 2009) ("[T]rebling of defendants' profits is mandatory *if the court finds that defendants' actions were willful*, absent extenuating circumstances." (emphasis added)). Second, Congress's intended that "[w]here the defendant is an 'unsophisticated individual, operating on a small scale, for whom the imposition of treble damages would mean that he or she would be unable to support his or her family,' treble damages may be inappropriate." *New York State Soc. of Certified Public Accountants v. Eric Louis Assocs., Inc.*, 79 F. Supp. 2d 331, 355-56 (S.D.N.Y. 1999) (citing Joint Explanatory Statement, 130 Cong. Record H. 12,076 at 12,083 (Oct. 10, 1984)). The circumstances of these defendants, proceeding *pro se* in this action for all purposes regarding plaintiff's damages award, thus justify a refrain from trebling.

faith or oppressive tactics. Therefore, plaintiff's request for an award of attorneys' fees in denied.

## CONCLUSION

For the reasons stated above plaintiff is not entitled to damages for defendants' infringement of his trademark; plaintiff is not entitled to attorneys' fees; and the October 28, 2008, Permanent Injunction will not be modified.

SO ORDERED.

Dated: New York, New York
       March **1**, 2011

_____
Richard J. Holwell
United States District Judge